UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID G. LIEBENGUTH<br>*Petitioner*, | )<br>)<br>) | CASE NO. 22-CV-00285 |
| v. | )<br>) | |
| ANGEL QUIROS ET AL.<br>*Respondents*. | )<br>) | MAY 10, 2023 |

### ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On February 21, 2022, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. §§ 2254 and 2241,[1] in which he asserts that his 2016 conviction and sentence for breach of peace violated his First Amendment right to free speech. As he must, Petitioner claims that the Connecticut Supreme Court's determination to the contrary violated clearly controlling United States Supreme Court precedent. The State of Connecticut opposes the Petition. For the following reasons, the Petition is DENIED.

**Procedural History**

On May 16, 2016, following a bench trial, Petitioner was convicted of one count of tampering with a witness in violation of Conn. Gen. Stat. § 53a-151 and one count of breach of peace in the second degree in violation of Conn. Gen. Stat. § 53-181. On August 9, 2016, the court sentenced Petitioner to four years of incarceration and four years of probation on the tampering conviction, which was to run consecutively to his sentence of six months of incarceration and two years of probation on the breach of peace conviction. On April 17, 2018, however, the Connecticut

---

[1] The Court considers the Petition filed pursuant to Section 2254 only, as the Second Circuit Court of Appeals has held that Section 2241 is not available to those who challenge state court judgments. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003) (holding that Section 2241 is unavailable to a state prisoner who seeks to challenge the execution of his sentence); *see also Dionizio v. Caron*, 3:20-CV-01542 (KAD), 2020 WL 6275037, at *1 (D. Conn. Oct. 26, 2020) (same).

1

Appellate Court reversed Petitioner's breach of peace conviction. *See State v. Liebenguth*, 181 Conn. App. 37 (2018). The state sought review of the Appellate Court's decision in the Connecticut Supreme Court, and on August 27, 2020, the Connecticut Supreme Court reversed the Appellate Court's decision, affirming the Petitioner's breach of peace conviction. Petitioner subsequently sought review from the Supreme Court of the United States, but his petition for writ of certiorari was denied on February 22, 2021. *See Liebenguth v. Connecticut*, 141 S. Ct. 1394 (Mem) (2021). This Court received the current Petition on February 21, 2022. [2]

**Facts**[3]

The Appellate Court set forth the facts the jury could have reasonably found as follows. On August 28, 2014, Michael McCargo ("McCargo"), a parking enforcement officer in New Canaan, Connecticut, ticketed Petitioner's car for being parked in a metered space without payment. Before McCargo left the area, Petitioner came back to his car and engaged in conversation with McCargo about the ticket. Petitioner said that the parking authority was "unfucking believable" and accused McCargo of issuing a parking ticket "because my car is white…[N]o, [you gave] me a ticket because I'm white."[4] Petitioner flared his hands and added emphasis to the profanity. As Petitioner walked toward his vehicle, he said to McCargo, "remember Ferguson."[5]

---

[2] This Petition was timely filed. *See* 28 U.S.C.A. § 2244(d)(1)(A) ("A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State Court. The limitation period shall run from the latest of—the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review…").

[3] All facts are taken from the Connecticut Appellate Court's decision in *State v. Liebenguth*, 181 Conn. App. 37, 39–43.

[4] McCargo is Black and Petitioner is white.

[5] On August 9, 2014, Michael Brown, an eighteen-year-old Black man, was shot and killed by Darren Wilson, a white police officer in Ferguson, Missouri. *See* https://www.justice.gov/crs/timeline-event/shooting-death-michael-brown-ferguson-mo.

At trial, McCargo testified that once both men were back in their vehicles, he heard Petitioner say, "fucking n*ggers." McCargo believed that this statement, paired with the statement about Ferguson, implied that what had happened recently in Ferguson, Missouri "was going to happen to him." Mallory Frangione, a young woman who witnessed the incident in the parking lot, also testified at trial. She observed that Petitioner moved his hands and body in an aggressive, irate way; that he raised his voice; and that he took steps toward McCargo during their interaction. She also described that Petitioner, once back in his car, circled the parking lot twice before pulling up next to McCargo. Frangione further confirmed that she heard Petitioner mention Ferguson and use profanity.

As McCargo drove off to continue his patrol, Petitioner drove by his car, turned to him with an angry expression, and repeated, louder this time, "fucking n*ggers." McCargo reported this incident to the New Canaan police, and Petitioner was later arrested in connection with the incident. At trial, after the state rested, Petitioner moved for a judgment of acquittal, which the court denied. Ruling from the bench, the trial court found, in relevant part:

> "[C]onsidering…the content of the defendant's speech taken in context and in light of his belligerent tone, his aggressive stance, the fact that he was walking towards Mr. McCargo and moving his hands in an aggressive manner, there's no other interpretation other than these are fighting words. And he uttered the phrase not once but twice…so for those reasons, the court rejects the defendant's claim that either or both of these statements were protected first amendment speech."

*State v. Liebenguth*, 181 Conn. App. at 44–45.

**Standard of Review**

Before filing a petition for writ of habeas corpus in federal court, the petitioner must properly exhaust his state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1). The petitioner must present the essential factual and legal bases for the federal claims to each appropriate state court, including the highest state court capable of reviewing

3

it, to afford the state courts a full and fair "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam) (internal quotation marks and citation omitted). And the presentment to the state courts must be sufficient to alert the state court that the petitioner is asserting a federal claim. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without 'first according the state courts an 'opportunity to … correct a constitutional violation.'" *Davila v. Davis*, 582 U.S. 521, 527 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).[6]

Further, the federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2254(a). The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
>
> (2) or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, at the time of the state court decision. *See White v. Woodall*, 572 U.S. 415, 419 (2014). Second Circuit law which does not have

---

[6] There is no dispute as to whether Petitioner exhausted his state court remedies.

4

a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett*, 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (finding that absent a Supreme Court case establishing a particular right, federal court inference of such a right is not a basis upon which to grant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.'" *Virginia v. LeBlanc*, 582 U.S. 91, 94 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)); *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *and Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness). Even clear error will not establish an unreasonable application of Supreme Court law. *See LeBlanc*, 582 U.S. at 94 (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015) (per curiam)).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. Here, Petitioner does not challenge the factual determinations of the state court. Finally, the federal court's review under Section 2254(d)(1) is

5

limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

**Discussion**

Petitioner identifies a single ground for relief—that his conviction violates the First Amendment and the Connecticut Supreme Court's ruling to the contrary is incompatible with federal law. This Court disagrees, and for the reasons that follow, concludes that the Connecticut Supreme Court's decision was not contrary to or an unreasonable application of any established First Amendment jurisprudence.[7]

In reviewing the Appellate Court's decision to reverse Petitioner's breach of peace conviction, the Connecticut Supreme Court addressed the following question: "[Did] the Appellate Court correctly conclude that the defendant's conviction must be reversed because the first amendment barred his prosecution for the verbal statements at issue." *See State v. Liebenguth*, 336 Conn. 685, 689, 250 A.3d 1, 6 (2020), *cert. denied.*, 141 S. Ct. 1394, 209 L. Ed. 2d 132 (2021). The Court began its analysis by acknowledging that the breach of peace statute "is limited by the free speech provisions of the first amendment to the United States Constitution." *Id.* at 687. It then went on to recognize that First Amendment protections "although expansive, are not absolute, and the United States Supreme Court has long recognized a few discrete categories of speech that may be prosecuted and punished, including so-called 'fighting words' — those personally abusive epithets [that], when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Id.* at 688 (quoting *Cohen* v. *California*, 403 U.S.

---

[7] Petitioner specifically takes issue with whether the Connecticut Supreme Court followed its own precedent in *State v. Baccala*, 326 Conn. 323, 163 A.3d 1 (2017), by failing to adequately distinguish *Baccala* from the case at bar. It is not for this Court to decide, however, whether the Connecticut Supreme Court held true to its own binding precedent. This Court must decide only whether the decision comported with clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).

15, 20 (1971)). The Connecticut Supreme Court then examined the history of the "fighting words" exception to First Amendment protected speech, beginning with its recognition for the first time in *Chaplinsky v. New Hampshire,* 315 U.S. 568 (1942), and the developments in Connecticut since that time.

The Connecticut Supreme Court concluded that under *Baccala*, the "state was required to prove beyond a reasonable doubt that the defendant's words were likely to provoke an imminent violent response under the circumstance in which they were uttered."[8] *See Liebenguth*, 336 Conn. 685 at 698. This of course is entirely consistent with United States Supreme Court's holding in *Cohen*. The Connecticut Supreme Court then went on to analyze the statements in the context in which they were made because a fighting words analysis involves both the quality of the words as well as the circumstances in which the words are used. *See Liebenguth*, 336 Conn. 685 at 700. "A proper contextual analysis requires consideration of the actual circumstances as perceived by a reasonable speaker and addressee to determine whether there was a likelihood of violent retaliation…" *Id.* at 701.

Under this analysis, the Connecticut Supreme Court first found that the word used by the Petitioner was "highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination." *Id.* at 704 (collecting cases) (quoting *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1116 (9th Cir. 2004). Further, that the Petitioner's use of a profane modifier signified a malignant emphasis, which "amplified the assaultive nature of the utterance, making it even more hateful and debasing." *Id.* at 706. Second, the Connecticut Supreme Court examined Petitioner's behavior surrounding the utterance. It noted that Petitioner got back in his car, circled the lot twice, pulled up next to McCargo, and stated the offensive remark again in a louder, more aggressive

---

[8] The decision repeatedly cited *Baccala,* which, this Court observes, is itself rife with citations to multiple United States Supreme Court decisions and Circuit court decisions applying them.

manner. *See id.* at 706–07. It also acknowledged that Petitioner inserted race into the interaction, both in accusing McCargo of issuing the ticket because he was white and referencing the then-recent events in Ferguson, finding that "the defendant's reference to Ferguson significantly escalated the already fraught and incendiary confrontation." *Id.* at 707. Ultimately, the Connecticut Supreme Court determined that this was a rare case that met the "demanding standard" for fighting words, and that Petitioner's speech was not protected by the First Amendment.

In its decision, the Connecticut Supreme Court further rejected Petitioner's contention that McCargo, as a public official, was expected to exercise a greater degree of self-restraint in the face of provocation. The Connecticut Supreme Court acknowledged that certain professions, such as police officers, may be expected to exercise greater restraint when vile, vulgar, or inappropriate speech is directed at them but held that a parking enforcement officer is not comparable to a police officer. *See id.* at 710.[9] Petitioner cites no United States Supreme Court precedent, and this Court has found none, that is inconsistent with the Connecticut Supreme Court's determination on this issue. Additionally, the Connecticut Supreme Court explained that McCargo's lack of a violent reaction did not affect the conclusion reached, as it could not be persuaded that an average person would have exercised a similar measure of self-control under the circumstances. *See id.* at 711. It also dismissed, citing multiple cases in support, Petitioner's contention that the words alone could not support a conviction because they were spoken while two individuals were in separate cars. *See id.* at 712–13. And although the Connecticut Supreme Court agreed that *Baccala* was controlling, it differentiated the facts of that case from those in this case. *See id.* at 714–18.

---

[9] This is because the standard is whether an "average" citizen would react with violence when confronted with the words at issue. *Baccala,* 326 Conn. at 243–244 (observing that the United States Supreme Court has suggested that a police officer might be expected to exercise a higher degree of restraint than an average citizen but further observing that it has not yet narrowed the fighting words exception in accordance with this suggestion.)

There can be no question that the Connecticut Supreme Court was keenly aware of and considered applicable decisions of the United States Supreme Court regarding the "fighting words" exception to protected free speech. And the Connecticut Supreme Court's application of that jurisprudence to the facts of the case appears correct, and certainly was not "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.'" *LeBlanc*, 582 U.S. at 94 (quoting *Richter*, 562 U.S. at 103).

**Conclusion**

The Petition is **DENIED**. The Clerk of Court is directed to enter judgment and close this case. The Court shall not issue a certificate of appealability because the Petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), as no "reasonable jurists could debate whether…the petition should have been resolved in a different manner." *Middleton v. Att'ys Gen. of States of N.Y., PA*, 396 F.3d 207, 209 (2d Cir. 2005) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)).

**SO ORDERED** this 10th day of May at Bridgeport, Connecticut.

*Kari A. Dooley*  _____
Kari A. Dooley
United States District Judge